PARTRIDGE *v.* MENCK and others.

In a suit to restrain the use of trade marks alleged to be simulated, if it appear that the marks used by the defendants, though resembling the complainant's in some respects, would not probably deceive the ordinary mass of purchasers, paying the attention which such persons usually do in buying the article in question; an injunction will not be granted.

An imitation is colorable and will be enjoined, which requires a careful inspection, to distinguish its marks and appearance, from those of the manufacture imitated.

In these cases, the question is not whether the complainant was the original inventor or proprietor of the article made by him and upon which he now puts his trade mark; nor whether the article made and sold under his trade mark by the defendant, is equal to his own in quality or value. But the court proceeds on the ground, that the complainant has a valuable interest in the good will of his trade or business; and having appropriated to himself a particular label, sign or trade mark, indicating to his customers, that the article is made or sold by him or by his authority, or that he carries on business at a particular place; he is entitled to protection against one who attempts to pirate upon the good will of his friends or customers or the patrons of his trade or business, by using such label, sign or trade marks, without his consent or authority.

Where the case is one of doubt in respect of the alleged piracy, the court should not grant or retain an injunction until the cause is heard on pleadings and proofs, or until the complainant has established his right by an action at law.

Before Vice-Chancellor Sandford, Nov. 10, 11; Dec. 4, 1846.

Before Chancellor Walworth, on appeal, Jany. 6; Jany. 25, 1847.

THIS case came before the Vice-Chancellor of the first circuit, on a motion founded upon the bill and answer, to dissolve the preliminary injunction granted by an injunction master on filing the bill.

It appeared by the bill, that one A. Golsh, who formerly resided in the city of New York, commenced the manufacture of a certain kind of friction matches, usually known as loco-foco matches, for which he acquired a great patronage. His matches were put up in small paper boxes, usually of brown paper, made with a cap or cover, which when placed on the box covered about a third of its length; and his trade marks were a cut representing a straw bee-hive surrounded by flowers and foliage, with the words "A. GOLSH's Friction MATCHES," above the hive. Both the cut and the words were printed on a label which was pasted upon the front of each box. Under the bee-hive was inserted on the label, usually in two panels, the street and number of the manufactory, and between what streets it was situated, and the place, "New York," under all.

The complainant succeeded Golsh in the business, and became enti-

tled to use his trade marks, and had continued to manufacture and sell the same article of matches, using those trade marks, and sometimes a label somewhat varied from the one described. His business had extended, so that large quantities of his matches were exported to the West Indies, Mexico and South America. The bill charged that the defendants Menck & Backes had been and were engaged in making friction matches for sale in New York, purporting to be the Golsh matches. It set forth two labels as being used by the defendants upon the brown paper boxes in which they put up their matches. One contained the device of the bee-hive and foliage, over which were printed the words " Menck & Backes' Friction Matches, late chemist to A. Golsh ;" the words *late chemist*, being in caps smaller than the rest; and under the bee-hive, were printed in two panels the number and street in which their manufactories were situated, and under all the place, " New York." The other label contained a better executed bee-hive, with flowers and foliage, the same printed words under it, similarly arranged; and over it the words " MENCK & BACKES, FRICTION MATCHES MADE by J. BACKES LATE CHEMIST FOR A. GOLSH." The words " A. Golsh" being much larger and prominent than those above them.

The bill alleged that this was a piratical and fraudulent invasion of the complainant's trade marks, and had greatly injured him in the sale of the genuine A. Golsh matches. That the defendants by the use of their labels, intended to deceive purchasers of matches, and lead them to buy theirs, supposing them to be the genuine article which was known as the Golsh matches. That the other defendant, Samanos, advertised to receive orders for the spurious matches at his store, and was selling them in large quantities, in behalf of himself and his co-defendants. The bill prayed for an injunction against the further manufacture and sale and advertising for sale by the defendants, of matches so put up and labelled, or of any matches with the word " A. Golsh" and a bee-hive labelled on the boxes.

The defendants in their answer, admitted that Golsh established the manufacture and sale as alleged, and that the complainant succeeded to his business and used his trade marks. They stated that both Golsh and the complainant had at times used other and different marks. They admitted that they used and intended to use the label lastly above described, on their boxes of matches ; but denied that they had for a long time before filing the bill, used the label first charged upon them in the bill, or ever used it to any great extent. They stated that the de-

fendant Backes, was employed by Golsh himself, in the manufacture of his matches, and that Golsh communicated to him the mode and mystery of the manufacture as conducted by him ; and they apprized the public of the fact by the words on their label.   They denied the piracy and fraud charged in the bill, and averred that they always sold the matches as their own manufacture, and not as Golsh's, or the complainant's, and never intended to have purchasers so believe.   That their matches were made in the same mode as Golsh's, and were better than those made by the complainant.

The motion before the Vice-Chancellor, was argued by,

*E. H. Owen* and *F. B. Cutting*, for the defendants ; and

*A. H. Dana* and *C. Edwards*, for the complainant.

THE VICE-CHANCELLOR.—My views of the law relative to trade marks, were fully stated in the case of *Coats* v. *Holbrook*, which was referred to on the argument, and they remain unchanged.

In this case the question arises upon a motion to dissolve the injunction, so that I am to be governed as to the facts, by the statements contained in the answer.

Thus it appears that the defendant Backes, was formerly a chemist in the employ of A. Golsh ; and therefore the label describing him as " late chemist for A. Golsh," is true.   It further appears that the boxes used by the defendants, when the top or cover is put on, exhibit the whole of the words which I have quoted ; and when the top is removed the label shows the additional words above those quoted, " Menck & Backes Friction Matches made by J. Backes," in legible capital letters. Then in the lower compartments of the label, the places where the defendants make and sell them are legibly printed and are different from those on the complainant's label.   The mark of the bee-hive is a strong point of resemblance between the two labels, and although the defendants is upon a ground so black and so entirely filled with flowers and herbage, as to be manifestly distinguishable on a comparison with the complainant's label, yet if the case stood on that point only, I should think the imitation was so close as to be calculated to deceive ordinary purchasers.

But taking the whole label together, as it appears on a single box of matches when offered for sale, the resemblance of the bee-hive is qualified by the distinct terms " late chemist for A. Golsh ;" so that the arti-

cle does not purport to emanate either from A. Golsh or from his successor.

Now although the court will hold any imitation colorable, which requires a careful inspection to distinguish its marks and appearance from those of the manufacture imitated ; it is certainly not bound to interfere, where ordinary attention will enable a purchaser to discriminate. It does not suffice to show that persons incapable of reading the labels, might be deceived by the resemblance. It must appear that the ordinary mass of purchasers, paying that attention which such persons usually do in buying the article in question, would probably be deceived.

Tested by these rules, I do not think that the defendants label is an unlawful invasion of the complainant's trade mark. The complainant's matches are sold as " A. Golsh's." The defendants are sold as the manufacture of a " late chemist for A. Golsh." And any purchaser looking for the " A. Golsh" matches, would see at a glance, that the defendants article was not his, but that it came from some person, lately his chemist. Though the words " Late Chemist for," are smaller than the words " A. Golsh," on the defendants label ; they are perfectly plain and distinct, and printed in a type only a trifle smaller than the capitals used in our recent published reports.

The use of the bee-hive, I must say, leaves a shade of doubt in my mind, but it is not sufficient to warrant me in retaining the injunction on the case as disclosed by the answer.

The injunction must be dissolved.

---

The complainant appealed from this order to the Chancellor, and the cause was argued before him on the appeal, by

*S. M. Woodruff* and *M. T. Reynolds*, for the appellant ; and

*Edward Sandford*, for the respondent.

THE CHANCELLOR.—Since the decision of this court in the case of *Taylor* v. *Carpenter*, (In Chan. Dec. 3, 1844,) and which was recently affirmed by the Court for the Correction of Errors, there is no doubt of the power of the Court of Chancery to interfere by injunction to prevent the pirating of trade marks. The question in such cases is not whether the complainant was the original inventor or proprietor of the article made by him, and upon which he now puts his trade mark, or whether the article made and sold by the defendant under the complainants trade

mark, is an article of the same quality or value. But the court pro. ceeds upon the ground that the complainant has a valuable interest in the good will of his trade or business. And that having appropriated to himself a particular label, or sign, or trade mark, indicating to those who wish to give him their patronage, that the article is manufactured or sold by him, or by his authority, or that he carries on business at a particular place, he is entitled to protection against a defendant who at. tempts to pirate upon the good will of the complainant's friends or cus. tomers or the patrons of his trade or business, by sailing under his flag without his authority or consent.

In many cases it may be difficult to determine whether the complain- ant's trade mark has been actually pirated in such a manner as to be likely to deceive and impose upon his customers, or the patrons of his manufactures or business, and in cases of doubt, the court should not grant or retain an injunction until the cause is heard upon pleadings and proofs, or until the complainant has established his right by an action at law. But if the court sees that the complainant's trade marks are simulated in such a manner as probably to deceive his customers or the patrons of his trade or business, the piracy should be checked at once by injunction.

In this case I am not satisfied that the label used by the defendants will probably have the effect to deceive and impose upon those who are in the habit of buying and using the matches made and sold by the complainant, by inducing them to believe they are of his manufacture.

I do not find it distinctly charged in the complainant's bill, that he had been in the use of his second label before Menck & Backes assum- ed the use of their label. But even if there was such a charge, there is about as much difference between that label and the one now used by the defendants, as there is between theirs and the complainant's first label which was originally used by Golsh, except as to the form and appearance of the bee-hive. One difference between the original or Golsh label and the label of the defendants is, that all the printed words and figures on the Golsh label are in black letters upon a white ground, while those on the defendants label are in white letters upon a black ground. The Golsh label is also shorter than the defendants ; only reaching upwards upon the box to the bottom of the cover and leaving the whole printed part of the label above the bee-hive containing the words " A. GOLSH'S Friction MATCHES " distinctly visible below the cover of the box, while the printing on the defendants labels runs up under the cover of the boxes, leaving nothing visible above the bee-

hive, except the printed words " LATE CHEMIST FOR A. GOLSH ;" and the names of the streets and avenues and the numbers of the building at which the matches are made, at the bottom of these two labels are entirely different. So that without removing the covers from the boxes, the words upon the two labels strike the eye at once as being very dissimilar. And if the covers are removed for the purpose of seeing the parts of the labels which are under them, or to look at the matches, nothing will be found on the Golsh label concealed by the cover of the box ; but upon the upper part of the defendants label will be found the words " Menck & Backes Friction Matches, made by J. Backes," printed in small caps. The bee-hive upon the Golsh label is so badly made that it is necessary to look at the cut some time to discover what it was intended for ; but that upon the defendants label is an elegantly constructed device, which no one who had seen an old fashioned straw bee-hive in the days of his boyhood, could for a moment suppose was intended to represent anything else. Indeed the difference in appearance between these two labels is so great even while the covers remain upon the boxes, that it is hardly possible to suppose a person who had been in the habit of buying and using boxes of matches with the Golsh label, would suppose those with the defendants label were the same article, from the resemblance between the two labels.

It is not necessary that I should notice all the differences in appearance between the defendants label and the second label of the complainant. It is sufficient to say that the word GOLSH does not appear upon the complainant's second label below the cover of the box ; and that the only words upon that label below such cover and above the bee-hive, are " MATCHES without sulphur." But neither of those words appear upon the defendants label below the cover, and the two last words are not to be found on any part of their label. The only real resemblance between the complainant's second label and the defendant's label, either with or without removing the covers from the boxes, are the bee-hives and the black ground upon which the words and figures of the labels appear.

The Vice-Chancellor was therefore right in refusing to retain the injunction. And the order appealed from must be affirmed with costs.

----

While this note was going through the press, the author received the report of a case decided by Lord Cottenham, (who is again Chancellor

of England,) on the 11th of December, 1846, in which the application was to restrain an alleged fraudulent imitation of an almanack published by the complainant. The brevity of the report induces the author to publish it entire.

## COURT OF CHANCERY, Dec. 11, 1846.