GEORGE TALLCOT, RESPONDENT, v. CHARLES C. MOORE, APPELLANT.

*Trade mark — when injunction granted to restrain use of.*

Courts of equity will interfere to prevent one person from imposing upon or deceiving the customers of another by means of simulated labels, marks, indicia or advertisements, but it must be shown that the devices adopted are such as would ordinarily lead persons dealing in the articles to suppose them to be the same.

APPEAL from an order of the Special Term, denying a motion to vacate an injunction.

*Freling H. Smith,* for the appellant.

*A. G. W. Carter,* for the respondent. .

DANIELS, J. :

It was shown by the complaint and affidavits used upon the motion, that the plaintiff had, for upwards of eight years, been engaged in compounding and selling pills under the name of " Magic Cure," for the treatment and cure of malarial diseases. The subject of diseases in general, and of malarial diseases in particular, with a description of the effects expected to be secured by the use of the " Magic Cure," was treated of in a small pamphlet, with red cover, called " The Little Red Book. New Series, 1875." In the center of the first side of the cover is the figure of a woman in the act of writing on a scroll, with the words " The Magic " already completed, and having a child seated near her feet. The pamphlet also contains a large number of commendatory letters, and further references are made to persons named, residing in different States. The defendant was at one time employed by the plaintiff in this business of manufacturing and selling the " Magic Cure." And after that relation was terminated, he engaged in a similar operation for his own benefit by compounding and selling pills called " Moore's Pilules," for the prevention and cure of malarial diseases. And to promote the sale and use of this compound he also pub-

lished a book, bound in red paper, called the "Red and White Book," with the figures "50, 50," at the foot of the first and the top of the last pages of the cover. The words "The" and "White," and the figures, were printed with white letters, while the words "Red Book" were printed in red letters. The same general subject was discussed and described in the defendant's book as that contained in the plaintiff's, but in a different manner, and at greater detail. His book had no commendatory letters, but a list of references was inserted in it, containing most of the names referred to in the plaintiff's book. The name of the defendant's compound, the title of his book advertising it, the appearance of the cover, and the treatment of the subject, are different from the name, appearance, and contents of the plaintiff's, with the exception of the names of persons referred to. And, from a mere casual inspection and examination, it would be at once distinguished from the book of the plaintiff. The red cover, with the words "Red Book" contained in the title, and the references made to most of the same persons, indicate a disposition, on the part of the defendant, to impose upon the plaintiff's customers. But the attempt could hardly be successful when the book itself shows the article advertised to be of a different name, bearing no resemblance to the plaintiff's, or the title used by him, and the subject treated in a different manner; with no substitute whatever upon the cover, or the title page, for the female figure writing upon the scroll, or the child seated at her feet. The points of difference are so prominent and striking, as at once to produce the impression that both the medicines and the books are different productions. And, when that is the case, an action for an injunction cannot be maintained. Courts of equity will interfere for the purpose of preventing one person from imposing upon or deceiving the customers of another, by means of simulated labels, marks, indicia, and advertisements. But, in order to warrant such interference, the devices adopted to the prejudice of a preceding business must be such as would ordinarily lead persons dealing in the article to suppose it to be the same. The resemblance, or simulation, must be one from which deception and imposition may result. Where that does not appear to be the case, no necessity can exist for the interposition of the restraining power of a court, for purchasers may then be presumed

to be able to protect themselves. The rule upon this subject is practically the same as that applied for the protection of trade marks, where, in order to maintain an action for an injunction, it must appear that the ordinary mass of purchasers, paying that attention which such persons usually do in buying the article in question, would probably be deceived. The court is not bound to interfere " where ordinary attention will enable a purchaser to discriminate." (*Partridge* v. *Menck*, 2 Sandf. Ch., 622, 625; affirmed, 2 Barb. Ch., 101.) This principle was applied, and considered sufficient to justify the refusal of an injunction, applied for by the publisher of a paper called the " National Advocate," to restrain the publication of another paper, under the name of the " New York National Advocate," in *Snowden* v. *Noah* (Hopk. Ch., 347), the difference in the title being considered sufficient to protect the public from imposition. And a similar decision was afterward made where the title of one paper was that of " New Era," and of the other, " Democratic-Republican New Era." (*Bell* v. *Locke*, 8 Paige, 75.) The resemblances and differences were about equal in that to those existing in the present case. And, in regard to them, the chancellor observed that he did not " think that the defendant's paper is such a simulation of the complainant's present publication as to injure the circulation and patronage of the latter, by deceiving the public and inducing a belief that it is in reality the same paper." (Id., 77.) To render a work, or a medicine, the subject of restraint by injunction, the resemblance to the other must be such as to justify the conclusion that purchasers are in danger of being deceived and imposed upon by means of it. In *Perry* v. *Truefitt* (6 Beavan, 66), an injunction was denied until after a trial should be had at law, where the only difference consisted in the change of the party's name. The complainant's article was called " Perry's Medicated Mexican Balm," while the defendant sold his as " Truefit's Medicated Mexican Balm." And, in *Canham* v. *Jones* (2 Ves. & Bea., 218), it was held requisite to justify an injunction that the medicine should be represented to be that of the same person, and the trade and production the same. And the doctrine of *Hogg* v. *Kirby* (8 Ves., 215), and *Seeley* v. *Fisher* (11 Sim., 581), was substantially the same in effect. (See, also, *Dayton* v. *Wilkes* 17 How., 510.) The case made in the

plaintiff's favor was not sufficient to entitle him to an injunction under the well-settled principles of courts of equity. He may be within the protection of the act of congress concerning copyrights, but over that subject this court has no jurisdiction. For redress in that respect he must go into the federal courts, if he can make a proper case for that purpose. The order appealed from should be reversed, and an order entered vacating the injunction. But, as the use of the plaintiff's references by the defendant is indicative of the existence of a fraudulent design on his part, it should be without costs on this appeal, or on the motion made before the Special Term.

DAVIS, P. J., concurred.

BRADY, J.:

I concur with my brethren in the result, but reluctantly. I am not entirely satisfied that the defendant's adoption of the same color for his pamphlet or circular was conceived in a spirit of fair dealing, although it may have been. It is calculated, at least, to lead to mistakes.

Order reversed, and injunction vacated without costs on this appeal, or on motion made at Special Term.