WILLIAM H. POPHAM, Appellant, *v.* WILLIAM A. COLE et al., Survivors, etc., Respondents.

To entitle a party to relief for an alleged infringement of a trade-mark, the resemblance of the simulated to the genuine trade-mark must be such as to amount to a false representation, which is liable to deceive the public and enable the imitator to pass off his goods as those of the person whose trade-mark is imitated. When ordinary attention on the part of customers will enable them to discriminate between the trade-marks of different parties, the court will not interfere.

Plaintiff, a dealer in refined lard, stamped upon the cans in which it was put up for sale the figure of a large fat hog, which he claimed as a trade-mark; above the figure was his own name and the words "prime leaf lard." Defendants, who were engaged in the same business, under the firm name of "H. J. Wilcox & Co.," stamped upon their packages a globe, with a small, gaunt wild boar on top. Over this was the firm name, and below it the words "prime leaf lard." The letters and arrangement of the two were entirely different. In an action to restrain the use of the figure of a hog, to which the plaintiff claimed the right to exclusive use, as a trade-mark, *held*, that no fraudulent, deceptive imitation was established, as there was no such resemblance between the two devices or symbols as to deceive a purchaser of ordinary caution; that neither defendant's device alone, nor that in connection with his entire brand and mark, amounted to a representation, direct or indirect, that the article they sold was manufactured by plaintiff ; and that, therefore, the action was not maintainable.

As to whether plaintiff could appropriate to his own use, as a trade-mark, the picture of the animal from which not only his own, but the lard of all other dealers and manufacturers is derived, particularly when the same symbol has been used indiscriminately by dealers in lard and other products of the slaughtered animal, *quære.*

(Argued April 13, 1876; decided April 25, 1876.)

APPEAL from order of the General Term of the Superior Court of the city and county of New York reversing a judgment in favor of plaintiff, entered upon a decision of the court at Special Term. (Reported below, 6 J. & S., 274; 14 Abb. [N. S.], 206.)

This action was brought for an alleged infringement of plaintiff's trade-mark.

Plaintiff was engaged in the business of refining and packing lard for transportation, as was also the defendants. Plaintiff claimed the exclusive right to use in his business, as a symbol or device, the figure of a hog, and asked that defendants be restrained from using any brand, device or mark representing the figure of a pig or hog, on any lard or package of lard put up or sold by them.

The facts as found and as appear by the exhibits were in substance as follows:

For more than the twenty-five years prior to this action,

large quantities of lard in a crude or natural state have been sent from other parts of this country to New York and there dealt in as articles of trade and commerce, and during that time there has been in the city and neighborhood a business of refining such crude or natural lard. The product of such business was, among other names, called refined lard. Refined lard is whiter and harder than crude or natural lard, and better fitted to be sent to hot climates; but refining does not change its appearance, except to the eye of an expert. It had a better price in market. The best quality both of crude lard and of refined lard has been commercially known as prime leaf lard. During that time the commercial demand for refined lard has been for the purpose of shipping it to or through tropical climates, and of crude lard for the purpose of supplying other markets. Refined lard has been packed for exportation in tin and wooden vessels, but mostly in tin.

The plaintiff has been for fifteen years before this action in the business of making and selling refined lard, and during that time has in that business packed the lard made by him for sale in tin cases and pails, and in wooden kegs, tubs, barrels and tierces, and habitually and generally stamped or painted upon such packages a figure of a swine, together with words showing the quality of the lard, and his name and place of business. The figure thus used by the plaintiff represents a large, fat hog. Above it was plaintiff's name and the words "pure leaf lard."

The figure of a hog had been used by other persons engaged in selling refined lard, but had not been used in the trade upon tin vessels containing refined lard. During the last fifteen years, in many instances, barrels and tierces and other wooden vessels, containing natural or crude lard or some parts of the hog, as ham or bacon, on which vessels were painted or stencilled the figure of a pig or hog, have been sent in the usual course of trade by various persons in the west and other parts of this country to this city and here dealt in. In trade, such crude or natural lard or parts of the hog have not been into market here in tin cases or packages. For some years

before the bringing of this action the refined lard made and sold by the plaintiff has been in trade in this city, and in foreign places to which it was exported, generally known and recognized and distinguished from the refined lard made by others by the figure of the pig or hog placed upon it by him as stated above, and it was commercially spoken or written of as lard, of Popham's pig brand or of the pig brand. In the autumn of 1872 the defendants were refiners of lard in this city, and having sold a large quantity of lard for exportation to South America, packed such lard in tin vessels of the size and form usual in the trade, and upon such vessels, together with their firm name, to wit, "W. J. Wilcox & Co.," place of business and words signifying the quality of the lard, placed the figure of a swine. Beneath this figure they also placed the figure of a sphere or hemisphere, upon which the hog was represented as standing. The figure of the swine was smaller than that used by plaintiff, and was so shaped as to represent a wild boar, gaunt and thin. The firm name was above the device and below it the words "prime leaf lard." The letters were of different size and entirely different.

As conclusions of law the court found that the plaintiff has the exclusive right to use upon packages of refined lard made by him the said figure or mark of the swine, and that the defendants have not the right to place or use upon packages of refined lard the figure or mark of a swine ; that the defendants should be perpetually restrained and enjoined from using or placing upon packages of refined lard not made by plaintiff the figure of a swine, as above found to have been used by them, or any imitation or likeness of the figure of a swine, used by the plaintiff as above found.

Judgment was entered accordingly.

*S. F. Cowdrey* for the appellant. Plaintiff had a right of property in the figure of a hog and the words "pig brand" used by him as a trade-mark, and was entitled to be protected in the use of them. (*Fettridge* v. *Wells*, 4 Abb., 146; *Gillott* v. *Esterbrook*, 48 N. Y., 379; *Amosk. Mfg. Co.* v. *Spear*, 2

Sandf., 605; *Stokes* v. *Landraff*, 17 Barb., 612; *Bloss* v. *Bloomer*, 23 id., 609; *Clark* v. *Clark*, 25 id., 79; *Bklyn. W. L. Co.* v. *Masury*, id., 418; *Howard* v. *Henriques*, 3 Sandf., 727; *McAndrews* v. *Bessett*, 10 L. T. R., 443; *Serxo* v. *Provezendo*, 1 L. R., Ch., 197; *Caswell* v. *Davis*, 58 N. Y., 234; *Taylor* v. *Gillies*, 59 id., 334; *Popham* v. *Wilcox*, 14 Abb. [N. S.], 206; *Wil. Eq.*, 206; *Taylor* v. *Carpenter*, 11 Paige, 292; *Burnett* v. *Phalon*, 42 N. Y., 594; *Filley* v. *Fassett*, 44 Mo., 168; *Edelstein* v. *Edelstein*, 1 DeG., J. & S., 185.) If, in the imitation of a trade-mark, there is such a resemblance to the original as is calculated to mislead purchasers, it is a violation of it. (*Knott* v. *Morgan*, 2 Keene, 213; *McCartney* v. *Garhart*, 45 Mo., 593; *Lockwood* v. *Bostwick*, 2 Daly, 521; *Williams* v. *Johnson*, 2 Bosw., 1; *Partridge* v. *Menck*, 2 Barb. Ch., 101; *Swift* v. *Day*, 4 Robt. 611; *Matsell* v. *Flanagan*, 2 Abb. [N. S.], 459; *Bininger* v. *Wattles*, 28 How., 206; Upton on Trade-marks, 221.)

*Wm. F. Shepard* for the respondents. Plaintiff had not an exclusive right to use the symbol of a hog as a trade-mark. (*Gillott* v. *Esterbrook*, Cox Am. T. M. Cas., 347; *Stokes* v. *Landgraff*, 17 Barb., 608; *Wolfe* v. *Goulard*, 18 How. Pr., 64; *Bininger* v. *Wattles*, 28 id., 206; *Corwin* v. *Daly*, 7 Bosw., 222; *Caswell* v. *Davis*, 58 N. Y., 223.) There was no such similarity between the two brands or labels as to entitle plaintiff to the relief demanded. (*Amosk. Mfg. Co.* v. *Spear*, 2 Duer, 607; *Swift* v. *Day*, 4 Robt., 611; *Snowden* v. *Noah*, Hop. Ch., 347; *Partridge* v. *Menck*, 2 Sandf. Ch., 101; 2 Barb. Ch., 101; *Colloday* v. *Baird*, 4 Phil., 139; *Stephens* v. *De Gonto*, 7 Rob., 343; *Rowley* v. *Houghton*, 2 Brews. [Penn.], 303; *Mer. Mfg. Co.* v. *Am. L. C. Co.*, Cox Am. T. M. Cas., 707; Brown on T. M., § 333.)

Allen, J. The evidence is that the imprint or picture of a hog has been used for many years by dealers in the different products of that animal, as ham, bacon and lard, by being painted or stenciled upon the packages containing those dif

ferent articles; but it would seem that it was first used by being printed or stamped upon packages of refined lard by the plaintiff. That article does not differ essentially in appearance from crude lard, and the two can only be distinguished by experts. The refining of lard for market is of comparatively recent origin, and the process is principally resorted to when the lard is intended for shipment to warm climates. The sign or symbol may be employed with equal truth in respect to any parts of the dead swine or the products of that animal put up for sale, and no one dealer has a greater right than any other to appropriate it to his own purposes. A serious question might be made as to the right of the plaintiff to appropriate to his exclusive use as a trade-mark the picture of the animal from which not only his lard but the lard of all other dealers and manufacturers of lard is derived, especially when the same emblem or symbol has been used by dealers in lard and other products of the slaughtered hog indiscriminately as they have had occasion. But, passing this question, there are other difficulties in the plaintiff's case which are insuperable.

The judgment, which was reversed at General Term, in substance, declared the brand or mark used by the defendants representing the figure of a hog or pig upon their packages of lard, was a fraudulent imitation of the figure of the same animal, adopted and used by the plaintiff as a trade-mark, calculated to deceive; and adjudged that the plaintiff was entitled to the exclusive use of the symbol as a trade-mark upon lard, and perpetually enjoined the defendants from using or placing such symbol or device upon any package of lard traded in or put up or sold by them.

The imitation of a trade-mark with a design to deceive the public, and which is liable to deceive them and enable the imitator to pass off his goods as those of him whose trade-mark is imitated, is a fraud upon the latter and a false representation to the public, and the injured party may have relief to the extent that the imitation is deceptive and liable to mislead. The purpose of all fraudulent imitations of trade-marks

is to impose the goods of the fraudulent actor upon the public as those of the owner of the mark, and when the imitation is such that the success of the design is probable, a court will interfere by injunction and grant relief against the fraud. But to entitle a party to relief the resemblance of the simulated to the genuine trade-mark must amount to a false representation of the facts indicated by the genuine mark, that is, of the manufacture or proprietorship of the article. (*Amoskeag Manuf. Co.* v. *Spear*, 2 Sand. S. C. Rep., 599.) Words or phrases which indicate the character, kind, quality and composition of an article of manufacture cannot be appropriated by the manufacturer to his own use as a trade-mark. (*Caswell* v. *Davis*, 58 N. Y., 223; *Taylor* v. *Gillies*, 59 id., 331.) There is no objection taken to any part of the brand or label of the defendants save only the exhibition thereon of the figure of a wild boar. Every other part of it descriptive of the article, " prime leaf lard," and the names of the manufacturers, " W. J. Wilcox & Co.," although in substance the same as that upon the plaintiff's brand or mark, except that the latter has his own name thereon as the manufacturer, is conceded to be innocent and lawful. The defendants' trade-mark is not the same as that used by the plaintiff. They have upon their packages the imprint of an animal of the same genus as that appearing upon the plaintiff's packages, but entirely unlike in appearance and characteristics, and placed upon a globe, which does not appear as a part of the plaintiff's trade-mark. The question in this, as in every other case, is, whether there is such resemblance between the two as to deceive a purchaser using ordinary caution. The difference is so palpable here that no one can be deceived. The shape and general appearance of the pictured animals upon the two brands and their position, the one upon a globe and the other without such support; the one representing a small, lank and lean wild boar, and the other, a large, fat, well-conditioned domestic animal, are so entirely dissimilar that the one can hardly be said to be an imitation of the other, and clearly not a fraudulent or deceptive imitation. The brands and letter-

ing descriptive of the article, and giving the names of the plaintiff, and defendants, respectively, as manufacturers, are entirely unlike in arrangement, size of the letters, and general form and appearance, insomuch that no one could mistake the packages of the defendants for those of the plaintiff. It is said by Lord CRANWORTH, in *The Leather Cloth Company* v. *The American Leather Cloth Company* (11 House of Lords Cases, 522), that the gist of the complaints in all these cases is that the defendant, by placing the plaintiff's trade-mark on goods not manufactured by the plaintiff, has induced persons to purchase them, relying on the trade-mark as proving them to be of the plaintiff's manufacture, and that this necessarily supposes some familiarity with the trade-mark. We may say in this case, as was said by the court in that, that to any one at all acquainted with the plaintiff's trade-mark there could not be, even on the most cursory glance, any deception. There was no representation, direct or indirect, by the use of the device or symbol, whether by itself or in connection with the entire brand and mark of the defendants, that the article which they sold was manufactured by the plaintiff. The court is not bound to interfere where ordinary attention will enable purchasers to discriminate between the trade-marks used by different parties. The maxims "*Vigilantibus non dormientibus leges subserviunt*," was applied by Lord CRANWORTH in the case last cited, and the principle was affirmed in *Partridge* v. *Menck* (2 Sand. Ch., 622), affirmed by the chancellor (2 Barb. Ch., 101), and in this court, but not reported; see, also, *Snowden* v. *Noah*, (Hop. Ch. R., 396); *Stokes* v. *Landgraff* (17 Barb., 608).

The order granting a new trial must be affirmed, and judgment absolute for the defendants.

All concur.

Order affirmed, and judgment accordingly.