## BARBER *v.* CONNECTICUT MUTUAL LIFE INS. CO.

*(Circuit Court, N. D. New York. 1883.)*

1. SALE AND DELIVERY—GOOD-WILL OF BUSINESS.

The good-will of an established business, is a common subject of contract, although it is nothing but the chance of being able to keep the business which has been established, yet the rights of a purchaser of such good-will will be enforced in equity and recognized at law as effectual between the parties to the contract.

2. INSURANCE COMPANY—AUTHORITY OF GENERAL AGENTS.

Where the general agents of an insurance company, by their representations, induced complainant to invest money in the purchase of the good-will of a special insurance agency; if without right he was deprived of an opportunity of transferring his interest to another, he is entitled to compensation to the extent of his loss.

3. SAME—RESTRICTION ON AUTHORITY.

The general agents of a foreign insurance company in a state other than the state of its creation, having authority to solicit applications for insurance and collect the premiums therefor, and authorized to appoint local agents and pay them reasonable commissions, and obligated to bear all the expenses of the business within their territory, cannot bind the company by their conduct or representations respecting the purchase of the good-will of a local agency.

4. SAME—CONTRACT NOT BINDING ON COMPANY.

A contract which would create the relation of vendor and purchaser between an insurance company and a third party, and as such outside the ordinary and customary contracts, which are within the implied authority of the general agents of the company, is not binding on the company.

*Sedgwick, Ames & King*, for complainant.

*Pratt, Brown & Garfield*, for defendant.

WALLACE, J. The proofs establish, in substance, the theory of the bill that the complainant purchased the good-will of Marvin and of Carr in their business as local agents for the defendant, upon

the faith of the assurances of Peck & Hillman, the general agents of the defendant in this state. These representations were to the effect that it had been their uniform practice, while having charge of the local agencies within their territory, to permit their subagents, when desiring to relinquish their agencies, to sell the good-will of the agency business to some acceptable successor, and that the right of the local agents to make such transfers was always recognized and protected by the general agents, and that complainant might rely upon this privilege when he wanted to relinquish his agency. The value of this right is apparent, in view of the peculiar character of the interest of the local agents in the business of their agencies. They were not appointed for any definite period of time, they received no salary, and their only compensation was by commissions upon premiums collected by them while they continued to act as such local agents. They were expected to solicit insurance upon lives for a commission upon the original premiums, and the renewal premiums which might be paid during the continuance of their employment. In view of this uncertain tenure, and, doubtless, in order to stimulate them to make their agencies valuable, the custom of permitting them to dispose of the good-will of their agencies had been sanctioned by the general agents. Purchasers could be found who would be willing to pay a large consideration for the interest in an established agency business, which was producing a revenue from the commissions to accrue upon the renewal premiums paid in from year to year by those who had insured with the agency. The agents' privilege of finding such a purchaser, and the assurance that the general agents would co-operate in making this a practical and valuable possibility, was a substantial incident of the relation between the subagent and the general agent.

Notwithstanding the precarious value of such a right, there seems to be no good reason why it should not be recognized and protected by the law. The good-will of an established business, which is a common subject of contract, is nothing but the chance of being able to keep the business which has been established. The sale of a mere chance, which vests in the purchaser nothing but the possibility that a preference which has been usually extended to those whose rights he acquires will be extended to him, has been enforced in equity, and recognized at law as effectual between the parties to the contract. *Phyfe* v. *Wardell*, 5 Paige, 268; *Armour* v. *Alexander*, 10 Paige, 571; *Hathaway* v. *Bennet*, 10 N. Y. 108.

The complainant having been induced by the representations of

Peck & Hillman to invest several thousand dollars in the purchase of this property interest, acquired as against them what he purchased, and if without right he was deprived of an opportunity of transferring his interest to another, he is entitled to compensation to the extent of his loss.

It has been objected, however, that the complainant's remedy is at law, and as there is no relief to which he is entitled except a recovery of damages, the objection seems unanswerable. He cannot found his right to resort to equity upon the ground of fraud or trust. His case must rest upon the plain theory of the violation of a contract. There are allegations in the bill that he was deprived of vouchers relating to his agency business by the false representations of the general agents. These vouchers were the property of the defendant. The complainant does not assert that he had any lien upon them.

There are no difficulties in the way of establishing his damages at law, which would not be encountered in equity. Doubtless it would be difficult in either jurisdiction to determine the just measure of his compensation, but his recovery would depend upon the same rule of damages in both.

There is another ground upon which the complainant must fail, and that is because he has selected the wrong party as defendant. Peck & Hillman had no authority to bind the defendant by their conduct or representations respecting the purchase by the complainant of the good will of his predecessors. They were the agents of the defendant for this state to solicit applications for insurance, and collect the premium paid by persons insuring in their territory. They were authorized to appoint subagents and pay them reasonable commissions, and were obligated to bear all the expenses of soliciting insurance and collecting premiums within their territory, including the commissions and expenses of the subagents. Although they were termed general agents, the complainant had no right to assume that they possessed unlimited authority and could bind their principal in a transaction so far outside the scope of the usual powers of agents of their description. The state agents of insurance companies ordinarily exercise limited powers, although they represent their principal throughout an extensive territory. It is stated in May, Ins. § 125, that their powers differ from those of local agents principally in their geographical extent, except that they may, generally, appoint local or subagents, which local agents cannot. They have a wider field of action than local agents, and are expected to exercise a supervisory authority over them.

It may for present purposes be assumed that the defendant would be responsible for the contracts made by Peck & Hillman respecting the compensation to be paid to the subagents they were authorized to appoint, but it would not be responsible for a contract made by them giving an extraordinary compensation to a subagent. The limitation upon the implied powers of such agents to charge their principals is well illustrated by the case of *Anchor Life Ins. Co.* v. *Pease,* 44 How. 385, where it was held that the general agents of a life insurance company had no implied authority to make an agreement with a physician employed by them in examining applicants for insurance, whereby the company were obligated to accept his services in payment of the premium on a policy issued to him by the company. The contract to which it is sought to hold the defendants is one which would create the relation of vendor and purchaser between the company and the complainant, and, as such, is quite outside the ordinary and customary contracts which are within the implied authority of such agents to make.

Furthermore, the proofs show that Peck & Hillman did not assume to speak for the insurance company in the negotiations respecting the purchase by complainant. The representations made by Hillman were concerning the course which Peck & Hillman had adopted in the past, and would adhere to in the future, respecting the transfer by their subagents of the good-will of their agencies, and related solely to their personal conduct and intentions. The case is destitute of evidence to show that complainant ever had any reason to suppose that he was dealing with the defendant in the purchase of the agency business.

The theory that the complainant was justifiably removed as local agent, for dereliction of duty, has not been considered, because it has not been deemed necessary to the decision of the controversy. Whether there was any misconduct on the part of the complainant, and, if so, whether the right to terminate his agency would relieve Peck & Hillman of liability for refusing to permit him to transfer the good-will of his agency business, are questions which ought not to be determined unnecessarily. The bill is dismissed.

---

### Good-Will.

There is hardly space enough within the limits of a note to a case fully to set forth the law of good-will with all its distinctions and details. But the authorities may be collected, and the general principles stated and partially

illustrated. This will be attempted in the present note. Probably there can be no better definition of good-will than that framed by Mr. Justice STORY, who says: "Good-will may properly enough be described to be the advantage or benefit which is acquired by an establishment, beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence or punctuality, or from other accidental circumstances or necessities or even from ancient partialities or prejudices." Story, Partn. § 99. Other definitions are met with in the books; as, for example, in *Crutwell* v. *Lye*, 17 Ves. 335, by Lord ELDON; *Churton* v. *Douglas*, Johns. Ch. 174, by Vice-Chancellor Sir W. PAGE WOOD; *Wedderburn* v. *Wedderburn*, 22 Beav. 84, by Sir JOHN ROMILLY, M. R.; *Chissum* v. *Dewes*, 5 Russ. 29, by Sir JOHN LEACH, M. R. See, also, *Giblet* v. *Read*, 9 Mod. 460.

Lord ELDON, in *Kennedy* v. *Lee*, 3 Mer. 440, says: "There is another way in which the good-will of a trade may be rendered still more valuable; as by certain stipulations entered into between the parties at the time of the one relinquishing his share in the business; as by inserting a condition that the withdrawing partner shall not carry on the same trade any longer, or that he shall not carry it on within a certain distance of the place where the partnership trade was carried on, and where the continuing partner is to carry it on upon his sole and separate account." To this interest or advantage transferred by the retiring partner, Judge STORY, following Lord ELDON, (Partn. § 99,) has applied the name "good-will;" but this is not quite accurate. Good-will denotes a relation existing between a man or firm and the public with reference to a particular business. It is the good-will of the public to the man or firm. All the partners in a firm have an interest in the firm's good-will, and when they withdraw they may take their interest in the good-will with them, or sell it to such partners or purchasers as remain to carry on the firm business. But a part of a thing is not the whole of it; no more is a partner's interest in his firm's good-will the good-will, and it cannot properly be so called.

Good-will has been held to be purely local; that is, so attached to the house or premises wherein the business was carried on as to pass by a lease or conveyance of such house or premises, (*Chissum* v. *Dewes*, 5 Russ. 29; *Dougherty* v. *Van Nostrand*, 1 Hoff. 68; *Williams* v. *Wilson*, 4 Sandf. Ch. 379; *Elliott's Appeal*, 60 Pa. St. 161;) but the weight of modern authority is clearly against this view. It is, as has been aptly said by Mr. A. S. Biddle, (14 Amer. Law Reg. 8, "Good-Will,") "a species of incorporeal personalty, subject, with but few exceptions, to the general laws which regulate that kind of property."

It may be sold or given away, like other personal property. *McFarlan* v. *Stewart*, 2 Watts, 111; *Holden* v. *McMakin*, 1 Pars. Eq. Cas. 27; *Howe* v. *Searing*, 19 How. Pr. 14; *Dougherty* v. *Van Nostrand*, 1 Hoff. 68; *Williams* v. *Wilson*, 4 Sandf. Ch. 379; *Mussellman's Appeal*, 62 Pa. St. 81; *Shackle* v. *Baker*, 14 Ves. 468; *Crutwell* v. *Lye*, 17 Ves. 335; *Mellersh* v. *Keen*, 28 Beav. 453; *Bradbury* v. *Dickens*, 27 Beav. 53; *Johnson* v. *Helleley*, 34 Beav. 63; *Wedderburn* v. *Wedderburn*, 22 Beav. 84; *Turner* v. *Major*, 3 Giff. 442; *Churton* v. *Douglas*, Johns. Ch. 174; *Banks* v. *Gibson*, 11 Jur. pt. 1, 680; *Hitchcock* v.

*Coker,* 6 Adol. & E. 438; *Beal* v. *Chase,* 31 Mich. 490; 14 Amer. Law Reg. 561.

It may be bequeathed. *Hitchcock* v. *Coker,* 6 Adol. & E. 438. See. also, *Smith* v. *Everett,* 27 Beav. 446. But see *Robertson* v. *Quiddington,* 28 Beav. 529.

A few cases hold that good-will is not a partnership asset. See *Howe* v. *Searing,* 19 How. Pr. 14, and cases referred to therein. But the clear weight of authority holds that good-will is a partnership asset. *Lewis* v. *Langdon,* 7 Sim. 421; *Banks* v. *Gibson,* 11 Jur. pt. 1, 680; *Johnson* v. *Helleley,* 34 Beav. 63; *Macdonald* v. *Richardson,* 1 Giff. 81; *Williams* v. *Wilson,* 4 Sandf. Ch. 379; *Martin* v. *Van Shaick,* 4 Paige, 479; *Case* v. *Abell,* 1 Paige, 401; *Dougherty* v. *Van Nostrand,* 1 Hoff. 68; *Mussellman's Appeal,* 62 Pa. St. 81; *McFarlan* v. *Stewart,* 2 Watts, 111; *Holden* v. *McMakin,* 1 Pars. Eq. Cas. 270; *Willett* v. *Blandford,* 1 Hare, 271; *Wedderburn* v. *Wedderburn,* 22 Beav. 84: *Turner* v. *Major,* 3 Giff. 442; *Austen* v. *Boys,* 2 De Gex & J. 626; *Bradbury* v. *Dickens,* 27 Beav. 53; *Mellersh* v. *Keen,* 28 Beav. 453; *Bininger* v. *Clark,* 10 Abb. Pr. (N. S.) 264; *Shepherd* v. *Boggs,* 2 N. W. Rep. (N. S.) 370; S. C. 9 Neb. 258.

Being a partnership asset the question arises whether it survives in case of the death of a partner. Lord LOUGHBOROUGH held that it survived. *Hammond* v. *Douglas,* 5 Ves. 539. This was the position taken by Vice-Chancellor Sir L. SHADWELL in *Lewis* v. *Langdon,* 7 Sim. 421. But Lord ELDON, in *Crawshay* v. *Collins,* 15 Ves. 218, doubted whether Lord LOUGHBOROUGH was correct as to the good-will surviving, and held that it did not survive. To the same effect see *Wedderburn* v. *Wedderburn,* 22 Beav. 84; *Smith* v. *Everett,* 27 Beav. 446; *Holden* v. *McMakin,* 1 Pars. Eq. Cas. 274; *Howe* v. *Searing,* 19 How. Pr. 14. In *Webster* v. *Webster,* 3 Swanst. 490, note, the court refused the suit of surviving partners to enjoin executors of a deceased partner from using the name of the testator in the trade carried on by them in partnership. See, also, *Bradbury* v. *Dickens,* 27 Beav. 53; *Turner* v. *Majer,* 3 Giff. 442; *Williams* v. *Wilson,* 4 Sandf. Ch. 379; *Scott* v. *Rowland,* 26 Law T. (N. S.) 391.

Upon the point whether, where a partnership is dissolved during the life of the partners, they have each a right to continue business under the old firm name, Sir J. ROMILLY, M. R., in *Banks* v. *Gibson,* 34 Beav. 566, said: "If two persons carried on business as Child & Co., and they thought fit to separate, each might call himself Child & Co., and there is nothing to prevent him from so doing." But in *Williams* v. *Wilson,* 4 Sandf. Ch. 405, it was decided that one partner could not exclude the others from the business and continue it alone under the old firm name. See, also, *Van Dyke* v. *Jackson,* 1 E. D. Smith, 419; *Fenn* v. *Bolles,* 7 Abb. Pr. 202; *Staats* v. *Howlett,* 4 Denio, 559; *McGowan, etc., Co.* v. *McGowan,* 22 Ohio St. 370; *Bowman* v. *Floyd,* 3 Allen, 76; *Spann* v. *Nance,* 32 Ala. 527; *Rammelsberg* v. *Mitchell,* 29 Ohio St. 22.

Good-will passes to assignees in bankruptcy, (*Ex parte Thomas,* 12 Mont., D. & De G. 294,) who may sell it, (*Crutwell* v. *Lye,* 17 Ves. 335,) and pending sale a receiver may be appointed to carry on the business and preserve the good-will, (*Martin* v. *Van Schaick,* 4 Paige, 479.) Since it is intangible, or incorporeal, there must be some way by which the person, firm, or corporation possessing the good-will can indicate to the world that such corporation,

firm, or person has a right to it. This is done by the use of some symbol or name or trade-mark. A sale or other transfer of the good-will passes the right to use the name or trade-mark which symbolizes it. Indeed, the name or trade-mark is considered to be a part of the good-will.

The name of a literary production constitutes part of the good-will of the publishers thereof. Thus *Bradbury* v. *Dickens*, 27 Beav. 53, holds that the title of a work, "Household Words," forms part of the firm assets. See, also, *Hogg* v. *Kirby*, 8 Ves. 215; *Bell* v. *Locke*, 8 Paige, Ch. 75; *Holden's Adm'r* v. *McMakin*, 1 Pars. Eq. 270; *Byron* v. *Johnston*, 2 Mer. 29; *Keene* v. *Harris*, 2 Ves. 342; *Seeley* v. *Fisher*, 11 Sim. 582; *Spottiswoode* v. *Clarke*, 2 Phill. Ch. 154; *Prowett* v. *Mortimer*, 2 Jur. (N. S.) 414; *Clement* v. *Maddick*, 1 Giff. 98; *Chappell* v. *Sheard*, 2 Kay & J. 167; *Same* v. *Davidson*, Id. 123; 8 De Gex, M. & G. 1; *Ingram* v. *Stiff*, 5 Jur. (N. S.) 947; *Maxwell* v. *Hogg*, L. R. 2 Ch. App. 307; *Sheldon* v. *Houghton*, 5 Blatchf. 285.

The name under which a business is conducted is part of the good-will of the business. John Douglas, a member of John Douglas & Co., having sold to his partners all his share in the good-will of the firm, was restrained by injunction, at the suit of such partners, from using the firm name of John Douglas & Co. And the vice-chancellor said that if the old firm had been merely "John Douglas," and a person of that name had sold all his share in the good-will of the firm, and "had secured the three managing men in the former business, and was going, as here, to set up the old firm of John Douglas with these three men, I should hold then, as I hold now, that he was not at liberty to trade under such misrepresentation," (*Churton* v. *Douglas*, Johns. Ch. 174; see, also, *Rogers* v. *Nowill*, 3 De Gex, M. & G. 614; 6 Hare, 325;) and, generally, if a name be valuable, even another person of the same name will not be allowed fraudulently to use it. *Rodgers* v. *Nowill*, 6 Hare, 325; 3 De Gex, M. & G. 614; *Holloway* v. *Holloway*, 13 Beav. 209; *Burgess* v. *Burgess*, 3 De Gex, M. & G. 896; *Taylor* v. *Taylor*, 23 Law J. Ch. 255; *Dent* v. *Turpin*, 2 Johns. & H. 139; *Churton* v. *Douglas*, Johns. Ch. 174; *Sykes* v. *Sykes*, 3 Barn. & C. 541; *Fott* v. *Lee*, 13 Ir. Eq. 490; *Croft* v. *Day*, 7 Beav. 84; *Fonthorn* v. *Reynolds*, 12 Law T. (N. S.) 75; *Lee* v. *Haley*, L. R. 5 Ch. App. 154. So a person will be restrained from representing himself as in business with, or the successor of, another. *Harper* v. *Pearson*, 3 Law T. (N. S.) 447; *Edgington* v. *Edgington*, 11 Law T. (N. S.) 299.

Where the name, trade-mark, or symbols are words *publici juris*,—that is, words which the public have a right to use,—their use will not be enjoined. The following words have been held *publici juris:* "Pennsylvania Wheat," "Kentucky Hemp," "Virginia Tobacco," "Sea-Island Cotton," *D. & H. Canal Co.* v. *Clark*, 13 Wall. 311; "Lackawanna Coal," *Colladay* v. *Baird*, 4 Phila. 139; "Extract of Night-blooming Cereus," 5 Phila. 464; "Glendon," (the name of a town,) *Glendon Iron Co.* v. *Uhler*, 13 Amer. Law Reg. 543; but see *Hirst* v. *Denham*, L. R. 14 Eq. 542; *Rudde* v. *Norman*, L. R. 14 Eq. 348. As to the word "Eureka," see *Ford* v. *Foster*, 27 Law T. (N. S.) 219. The use of "Bolton's L. L." was restrained on account of similarity with "Kinihan's L. L.," *Kinihan* v. *Bolton*, 15 Ir. Ch. 75. The use of the word "Anatolia," as applied to licorice, was restrained in *McAndrews* v. *Bassett*, 10 Jur. (N. S.) 540; "Onondaga Akron Cement or Water Lime" was enjoined because of similarity with "Akron Ce-

ment or Akron Water Lime." *Alvord* v. *Newman*, 49 Barb. 588. As to "Christy's Minstrels," see *Christy* v. *Murphy*, 12 How. Pr. 77.

In *Wotherspoon* v. *Currie*, 27 Law T. (N. S.) 393, the defendant was restrained from using the word "Glenfield," the name of a place in Scotland, it having acquired a particular meaning by complainant's use of it to designate his manufacture of starch. In *Bury* v. *Bedford*, 4 De Gex, J. & S. 352, the use of the figure of a lion couchant, surmounted by crossed arrows, with four initial letters, J. O. B. S., within the spaces formed by the arrows, was enjoined.

Several cases present instances of injunctions granted to enforce contracts relating to the good-will of hotels and public houses. *Marsh* v. *Billings*, 7 Cush. 322; *Howard* v. *Henriques*, 3 Sandf. 725; *Stone* v. *Carlan*, 3 Mo. 360; *Deig* v. *Lamb*, 6 Robt. 535; *Woodward* v. *Lazar*, 21 Cal. 448.

Where the plaintiff held a public house under a lease from the defendant, containing a proviso that at the expiration of the term all such sums of money as could be procured for the good-will of a licensed victualer in respect of said premises should belong to the plaintiff, at the expiration of the lease the defendant claimed an increased rent, and a sum by way of premium. The plaintiff refused these terms, and the premises were leased to one B. at an increased rent, and a premium of £1,300, for a 14-years' lease. Nothing under the name of good-will was paid by B. It was found by an arbitrator that the rent reserved was a sufficient rental for the premises, without any bonus, apart from the special value which the premises possessed, owing to the old and successful business which had been carried on there by plaintiff; and also that the good-will of plaintiff would, if belonging to the defendant, have been worth over £1,300. *Held*, that the proviso had been broken, and that, in determining the value of the good-will, the arbitrator was not to be guided absolutely by the fact that £1,300 had been paid by B. as premium, and that he was to consider the increased value of the good-will by reason of the general improvement of the locality. *Llewellyn* v. *Rutherford*, L. R. 10 C. P. 456.

A carrier's "route" on a newspaper is his property, and may be sold, together with the good-will of the customers. It would appear that an adequate remedy existed at law for the breach of contract to sell such a "route," but if it be shown that a breach of such contract would result in losses exceeding the market value of the route, or that its profits were not ascertainable by a jury, then specific performance will be decreed. *Senter* v. *Davis*, 38 Cal. 450. But see *Fallon* v. *Chronicle Pub. Co.* 1 MacArthur, 485.

Where a corporation, with the consent of its principal stockholders, has embodied their names in the corporate name, the right to use the name so adopted will continue during the existence of the corporation. A rival company, subsequently formed and embracing such stockholders, will have no right so to use the names of such stockholders as to mislead those dealing with them into the belief that the two companies are the same. · *Holmes B. & H.* v. *H. B. & A. M. Co.* 37 Conn. 278.

It has been doubted whether the good-will of professional men or firms was a subject of sale or transfer. See *Austin* v. *Boys*, 2 De Gex & J. 626; *Farr* v. *Pierce*, 3 Mod. 74. It has been urged that the business of professional

men depended upon the confidence of their patrons, and how, it has been asked, can this confidence be sold or transferred? Yet it is not unusual for physicians and lawyers to sell their practice. Perhaps sales of interests in practice and business to younger men who are admitted into the law firm or practice, and thus given an opportunity of acquiring the confidence of patrons, are more frequent than the sales of the entire practice. But the latter is not unusual, and the recommendation of the older practitioner goes far towards securing for the purchaser the continued patronage and good-will of the circle of patrons.

There is no doubt that an attorney's practice may be sold, and a sale of it is not contrary to public policy. *Bunn* v. *Guy*, 4 East, 190. See, also, *Dakin* v. *Cope*, 2 Russ. 170; *Thornbury* v. *Bevill*, 1 Young & C. Ch. 554. But the recommendation of the retiring atttorney may be withdrawn if the purchaser abuses it, (*Bunn* v. *Guy*, *supra*,) and it appears that such a contract is not specifically enforceable. "The business of an attorney consists in his being employed by others, from the confidence which they repose in his skill and integrity. In what way, then, is the court to decree the transfer of such a business?" Sir WILLIAM GRANT, in *Bozon* v. *Farlow*, 1 Mer. 459. See, also, *Baxter* v. *Connolly*, 1 Jacob & W. 580; *Candler* v. *Candler*, Jacob, 225; *Coslake* v. *Till*, 1 Russ. 376. But an injunction will be issued restraining an attorney who has sold the good-will of his business from practicing. *Whittaker* v. *Howe*, 3 Beav. 383; *Harrison* v. *Gardner*, 2 Mod. 198. So an injunction will be granted restraining the vendor of the lease of an academy from teaching school in the neighborhood. *Spier* v. *Lambden*, 45 Ga. 319. And see, *Bell* v. *Locke*, 8 Paige, 75. A suit for damages at law will lie if the contract of sale be broken either by vendor or vendee. *Bunn* v. *Guy*, 4 East, 190.

As to the vendor going into business after selling the good-will, in *Shackle* v. *Baker*, 14 Ves. 468, the Lord Chancellor ELDON said that where there is an undertaking upon the sale of the good-will of a trade not to carry on the same business, and to use the best endeavors to assist the purchaser, the remedy for a breach by enticing the customers of plaintiff was by an action of covenant or issue *quantum damnificatus*, and refused an injunction. See, also, *Williams* v. *Williams*, 2 Swan, 253; *Smith* v. *Fremont*, 2 Swan, 330. The general rule appears to be that the vendor of a business and good-will may set up a business *similar* but not identical with the one he has sold, but he must not solicit his old customers either to deal with him or to refrain from dealing with his vendee, else he will be enjoined. *Crutwell* v. *Lye*, 17 Ves. 335; *Cook* v. *Collingridge*, Jacob, 607. See, also, *Rupp* v. *Over*, 3 Brewst. 133; *Churton* v. *Douglas*, Johns. Ch. 174; *Hall* v. *Barrows*, 33 Law J. Ch. 204; *Davis* v. *Hodgson*, 25 Beav. 177; *Howe* v. *Searing*, 19 How. Pr. 14; *Johnson* v. *Helleley*, 34 Beav. 63; *Labourchere* v. *Dawson*, L. R. 13 Eq. 322; *Palmer* v. *Graham*, 1 Pars. Eq. Cas. 476; *Hall's Appeal*, 60 Pa. St. 458; *Augier* v. *Webber*, 14 Allen, 211; *Beal* v. *Chase*, 31 Mich. 490; 14 Amer. Law Reg. 561; *Buckingham* v. *Waters*, 14 Cal. 147; *Ginesi* v. *Cooper*, 14 Ch. Div. 596.

But while it is obviously unfair for a retiring partner who has sold his interest in the good-will of his firm to set up business and to attempt to decoy the old customers from the partner to whom the business has been sold, yet

no rule of justice requires that, in the event of these customers coming without solicitation to the retired partner's place, he be restrained from dealing with them. *Laggott* v. *Barrett*, 43 Law T. Rep. (N. S.) 641.

If a fraudulent representation be made in the sale of the good-will of a business, the contract of sale may be rescinded. *Cruess* v. *Fessler*, 39 Cal. 336.

Evidence to show that a new store opened by a retired partner two doors from that of his former copartners, to whom he had sold out, and with whom he had agreed not to go into business again, resembled the old store in appearance, is admissible in determining whether there has been a breach of the agreement. *Dethlefs* v. *Tamsen*, 7 Daly, 354.

A physician, purchasing the practice of another, who has deceived him by falsely representing such practice as being regular, legitimate, and allopathic, and worth $6,000 a year, may sue for damages, and upon trial may show that such practice was irregular and eclectic; that it consisted in part of abortion cases; and that the income was less than $6,000 per year. *Bradbury* v. *Barden*, 35 Conn. 577.

The measure of damages for a breach of a covenant not to re-enter business on the sale of the good-will of a trade is not the actual profit made, if title to more can be established through the default of the vendor. *Scott* v. *Mackintosh*, Ves. & B. 503.

In an action to recover the balance of purchase money of a school, where the vendor had agreed to sell the good-will of the institution, circulars and advertisements of a rival school, containing the name of the vendor as a member of the faculty of such rival institution, are not competent and relevant testimony to show damage by way of set-off, without first showing that such circulars, etc., were issued at the instigation of the vendor. *McCord* v. *Williams*, 96 Pa. St. 78.

But the remedy for a breach of a contract of sale of good-will is not confined to an action at law for damages. There is a remedy in equity. Some early decisions base the jurisdiction of equity in good-will and trade-mark cases entirely upon fraud and deceit, but in the light of later decisions this is not quite true. The jurisdiction of equity rests upon complainant's right, title, or property in the firm name, the trade-mark, or the symbol, and the use of a trademark or firm name will be restrained by injunction, although the person using it did so in good faith, without knowledge that it belonged to another, and supposing the trade-mark was merely a technical term. *Millington* v. *Foy*, 3 Mylne & C. 338. See, also, *Hall* v. *Barrows*, 33 Law J. Ch. 204; *Farina* v. *Silverlock*, 6 De Gex, M. & G. 214; *Partridge* v. *Mench*, 2 Barb. Ch. 101; *Leather Cloth Co. Lim.* v. *Amer. L. C. Co. Lim.* 4 De Gex, J. & S. 143; 1 Hem. & M. 271; 11 H. L. Cas. 523; *Wotherspoon* v. *Currie*, 27 Law T. (N. S.) 393. And it appears that an injunction will not be granted until a title to the good-will or trade-mark is made out in an action at law. See, as to this, *Motley* v. *Downman*, 3 Mylne & C. 1; *Bacon* v. *Jones*, 4 Mylne & C. 433, Sir JOHN ROLTS; Acts 25, 26, Vict. c. 42; *Partridge* v. *Mench*, 2 Barb. Ch. 101.

The complainant who seeks to restrain another's use of a particular name or mark, must come into equity with clean hands, else relief will not be granted to him. Thus, in *Leather Cloth Co. Lim.* v. *Amer. L. C. Co. Lim.* 11

H. L. Cas. 523, the dismissal of complainant's bill was affirmed, on the ground that it had been guilty of misrepresentation in using upon goods the words "Crockett & Co., Tanned Leather Cloth, Patented," and "J. R. & C. C. Crockett, Manufacturers," all of which was untrue.

But a distinction was pointed out by Lord WESTBURY. "Suppose," said he, "a partnership to have been formed a century ago, under a style or firm composed of the names of the then partners, and that the partnership has been continued by the admission of new partners in an unbroken series of successive partnerships, trading under the same original style, although the names of the present partners are wholly different from those in the original firm. Is it an imposition on the public that such partners should continue to use the style or firm of the original partnership? This question must be answered, without any doubt, in the negative.

"But suppose an individual or a firm to have gained credit for a particular manufacture, and that the goods are marked or stamped in such a way as to denote that they are made by such person or firm, and that the name has gained currency and credit in the market, (there being no secret process or invention.) Could such person or firm, on ceasing to carry on business, sell and assign the right to use such name and mark to another firm, carrying on the same business in a different place? Suppose a firm of A., B. & Co. to have been clothiers in Wiltshire for 50 years, and that broadcloth marked "A., B. & Co., Makers, Wilts.," has obtained a great reputation in the market, and that A., B. & Co., on discontinuing business, sell and transfer the right to use their name and mark to the firm of C., D. & Co., who are clothiers in Yorkshire. Would the latter be protected by a court of equity in their claim to an exclusive right to use the name and mark of A., B. & Co.? I am of opinion that no such protection ought to be given. Where any symbol or label claimed as a trade-mark is so constructed or worded as to make or contain a distinct assertion, which is false, I think no property can be claimed for it; or, in other words, the right to the exclusive use of it cannot be maintained." *Leather Cloth Co. Lim.* v. *Amer. L. C. Co. Lim.* 4 De Gex, J. & S. 143.

*Chicago.*                          ADELBERT HAMILTON.