## WOODWARD v. LAZAR et al.

THE name established for a hotel is a trade mark, in which the proprietor has a valuable interest, which a Court of Equity will protect against infringement.

A tenant, by giving a particular name to a building, as a sign of the hotel business, for which he uses it, does not thereby make the name a fixture of the building, and the property of the landlord upon the expiration of the lease.

W. leased a lot of land, on which he erected a building, in San Francisco, and used it as a hotel, to which he gave the name of " What Cheer House." Before the lease expired, he purchased an adjoining lot, upon which he erected a larger building, and for a time occupied both buildings as the " What Cheer House," the principal sign being removed to the one last built. He soon after surrendered the leased lot, with the building which was on it, and continued the business, under the same name, entirely in the building which he had erected on the lot he had purchased. Two months afterwards, the defendants, having purchased the first mentioned lot and building, opened there a hotel, under the name of " The Original What Cheer House "—the word " original" being painted on the sign in small letters, and in a manner calculated to deceive the public into the supposition that it was the same name. In an action by W. against defendants, to restrain them from using the name of " What Cheer House " for their hotel : Held, that plaintiff was entitled to the relief sought, and that defendants should be enjoined from the use of the name.

APPEAL from the Fourth Judicial District.

The facts are stated in the opinion.

*Delos Lake*, for Appellants.

Plaintiff's right to relief is claimed on the general principles that recognize the right of property in a trade mark, and the question is whether it can fairly be brought within those principles. We say it cannot. The legal right and adjudged cases proceed solely on the ground of a valuable interest acquired in the good will of the trade or business, and that having appropriated a particular label, or sign, or trade mark, indicating that the article is of a certain person's manufacture, or sold by him, or by his authority, he is entitled to protection against any other person who attempts, by fraudulent and false imitations, to pirate upon the good will of the friends, or customers, or patrons, of the person whose business or goods have become known by his trade mark. (Willard's Equity, 206.)

Judge Story states the rule thus : " An injunction will be granted to prevent the use of names, marks, letters, or other *indicia* of a tradesman, by which to pass off goods to purchasers as the manufacture of that tradesman, when they are not so." (Story's Eq. Jur. sec. 951.)

At the foundation of the whole principle is the idea of falsehood. If a person appropriate certain signs, symbols, and marks, so that they become well known to the public, to all who see these exhibitions they are a declaration to the effect that the articles to which such marks are in any way attached are the property, manufacture, or business of such person. For any other person to use or appropriate them in like business would be to declare, as plainly as direct words could declare, that the property or business was the property or business of the person whose symbols or marks were used.

Now how can this principle be applied to a name by which a building has been long known and used as a hotel ? The name belongs to the building, and not especially to the business. In the very nature of the case it is not transferable. The public know the place by the name. To name a hotel the " What Cheer House," " Washington," " Jackson," " Astor," or " Irving House," is only to declare, after the name shall become known, the locality of the

house, and not who is the proprietor; and, therefore, it is no false-hood or deception for a tenant or owner who succeeds to the occupancy to retain the name by which the building is already known, because he does not thereby affirm that the former tenant carries on the business.   That there is an advantage in succeeding a tenant who has established for the house a business character may be true, and doubtless is so, in many instances; but that is an accidental benefit, which no Court can prevent.   It is, however, precisely what the Court in this case.is asked to prevent.

*S. Heydenfeldt,* for Respondents.

Courts of Equity will protect a party in the use of a trade mark, label, or sign, and where they are simulated, so as to deceive customers, the piracy will be checked by injunction.   (*Patridge* v. *Menck,* 2 Barb. Ch. 101; *Knott* v. *Morgan,* 2 Kien, [E. C. R.] 219; *Taylor* v. *Carpenter,* 11 Paige, 292; *Stokes* v. *Landjroye,* 17 Barb. 608, and cases there cited; *Coats* v. *Holbrook,* 2 Sandf. Ch. 586, and cases there cited.)   A similar case to the one at bar is *Howard* v. *Henriques* (3 Sand. S. C. 725).   (See, also, *Lewis* v. *Langdon,* 7 Sim. 421; *Hogg* v. *Kirby,* 2 Ves. 226.)   Even partial and colorable differences will not protect the piracy.   (*Clark* v. *Clark,* 25 Barb. 76; *Brooklyn, White & Co.* v. *Masury,* Id. 406.)   The principle is stated with distinctness by Judge Story. (2 Story's Eq. Jur. 951.)

NORTON, J. delivered the opinion of the Court— COPE, J. concurring.

This is an appeal from an order granting and an order refusing to dissolve an injunction by which the defendants are restrained from using the name of " What Cheer House " as the title or name of a hotel in the city of San Francisco.

Woodward, being the lessee of a lot of land, erected upon it a building, which he occupied as a hotel, and to which he gave the name of the " What Cheer House."   Before the expiration of his lease, he purchased an adjoining lot, upon which he erected a larger building, and for a time occupied both buildings as the " What Cheer House," the principal sign being removed from the first and

placed upon the second building.   In November, 1860, he surren-
dered the leased premises, with the building he had erected on
them, to the owners of the land, but continued to carry on the
business of the " What Cheer House " in the building he had
erected on the lot he had purchased.   In January, 1861, the
defendants purchased from the owners of the first mentioned lot
and building, and opened there a hotel, under the name of the
" Original What Cheer House " — the word " original " being
painted on the sign in smaller letters than the residue of the title,
and disposed in such manner that it was calculated to deceive the
public into the supposition that it was the same name.

It has been decided, and with good reason, that the name estab-
lished for a hotel is a trade mark, in which the proprietor has a
valuable interest, which a Court of Chancery will protect against
infringement.   (*Howard* v. *Henriques*, 3 Sand. S. C. 725.)   The
point of dispute in the case is as to whom the name " What Cheer
House," as a business sign, belongs.   The plaintiff claims that it
belongs to him, as the keeper of the hotel, which he continued to
conduct under that name after he surrendered the leased premises;
while the defendants claim that it is the designation of the building
in which the business under that name was first conducted, and
became their's when they became the owners of that building.

The character of the business which the name designates seems
to determine that the name pertains to a building, or at least to a
business conducted in a particular building, rather than to the call-
ing of the person conducting the business.   If a hotel-keeper cre-
ates a reputation for his business, it is as the keeper of some par-
ticular house at a known location.   The " What Cheer House "
cannot well be the business designation of a man separate from a
house, though the converse may very well be.   But conceding that
the name of a hotel must pertain to some particular house, or be
the trade mark of the person as the keeper of a particular house,
it does not follow that the name becomes inseparably connected
with the building to which it was first applied.   The name is not a
" fixture."   A person may have a right, interest, or property, in a
particular name, which he has given to a particular house, and for
which house, under the name given to it, a reputation and good

will may have been acquired; but a tenant, by giving a particular name to a building which he applies to some particular use, as a sign of the business done at that place, does not thereby make the name a fixture to the building, and transfer it irrevocably to the landlord. In this case, it does not appear that the lessee was under obligation to establish any particular business on the demised premises. Doubtless, he might at any time have discontinued the business of a hotel-keeper, and established in its stead the business of a merchant, and for this purpose have discarded the business name he had used for his hotel. And if he could do that, it seems to follow that he might remove from the demised premises, and establish a hotel at another place, and give to it the name he had used at the first locality. This, in effect, is what the plaintiff did. Before surrendering the demised premises, he transferred his business, and the name under which it was conducted, to another building, and then surrendered the demised premises and the building, with no special name, to his landlords. He had conducted the business under the name of the "What Cheer House," at his new locality, at least from November until January, while the old building remained unoccupied, and before it was opened as a hotel. He had in this time, if he had no other claim, established an exclusive right to the name as the trade mark for his new house. Although, therefore, his claim to protection, so far as his right results from the good will acquired for the name while it was applied exclusively to the demised premises may not be sustainable, he is entitled to protection in the exclusive use of the name as proprietor of the new house.

Order affirmed.