.Monell,
Upon the-dissolution of the firm, composed of the plaintiff, Edgar H. Reeves, and the defendants, the former, by a written conveyance, sold and transferred to the latter, all his interest in the partnership property and effects. Such property and effects were not described, and there was nothing, which in terms, would necessarily include, as a part of such property, the firm name of “E. H. Reeves & Co.,” under which the business of the partnership had previously been conducted ; and therefore, unless such name was so far a part of the partnership property, that the right to use it passed to the defendants, under the general designation of “property,” or as constituting what is called the “good will,” its use by the defendants was unauthorized, and if injuriously affecting the rights or interests of the plaintiff, should be restrained.'
That there may be and is “property” in a name, seems to be conceded, and the names of newspapers, hotels and places of amusement are instances of this species of property. Such names may be dealt with as property, and are the subject of sale and transfer, and are often of great value.
But the sale of a newswaper does not necessarily include the name by which it is designated and known. It may be of the type and presses only. And the sale of a hotel may be of the building merely. And where the name under which a business of any nature is carried on, is that"of the proprietor, it would require clear and express words of conveyance, to secure a transfer to a purchaser of the right to continue the use of such name, for his convenience or profit.
When, therefore, the name and style of a mercantile firm is that of the principal, and most responsible and influential member of the partnership, the mere transfer of the interests of such member, in the partnership property, will not convey the partnership name to the *97 purchaser, or give to him the right to continue its use against the consent of such person.
In this case, the firm name of “E. H. Reeves & Co.” was not sold or transferred to the defendants as constituting a part of the partnership property and effects. Nor did the sale, in terms or by necessary implication, include the good will of the business of the previous firm, and it is therefore unnecessary to determine whether the partnership name was a part of such good will. There was no restraint upon the retiring partner,- holding him from engaging in a similar business; and he violated no obligation to the defendants, by forming a new firm, under his own name, and transacting a business in all respects like that which he had released to them.
It is quite clear, I think, that the defendants acquired no right to continue the use of the partnership name of the old firm. If the good reputation of that firm was intended to pass into and become a part of j the defendants’ new firm, it should have been provided j for in the conveyance. That it was not intended it j should pass, is evident from the omission to include it.
But the defendants claim that they merely continued the use of the old firm’s name, for the purpose of designating themselves as the. “successors to” said, old firm. And they claim that they are the successors of such old firm, and therefore have an undoubted right to so designate themselves.
In the sense of a very common practice of persons, who have acquired the property of an old and well established mercantile firm, of using the term “successors to ’ ’ such firm, there may be an assumed right to so continue the use of such firm name. But such ! common practice does not give the right. It can be ac- . | quired only by a grant from the owner, and when suck ( grant has not been made there is no succession to it.
It is a very common mistake to suppose that a. *98 purchaser of the property of a mercantile firm is the <£ successor” of the firm. He succeeds to the property, to all that is conveyed to him, but to nothing more; and he has no more right to describe himself as the successor of such firm, because he has purchased its property, than he has to designate himself the successor of a manufacturing company from which he had casually purchased some goods.
In any aspect of the case, I am unable to find any right in the defendants to use in their business the old firm name of ££E. H. Reeves & Co.,” either with or without the words “ successors to,” and that, therefor, such use by them is a proper subject for the exercise of the equity power of the court.
It is not very important, in deciding this motion, that I should see the precise nature and extent of the injury which the plaintiffs may sustain by the continuous misuse of the old firm’s name. It is not difficult, however, to see that much injury may result from such misuse. But it is sufficient that the complaint alleges the injury and it is not now denied. And Mr. Justice Story says (Story on Partn., § 100), “that the right to use the name-of a known and celebrated firm, is often a very valuable possession, and, therefor, courts of equity will interfere to protect the right against the abuse of third persons, in using it to their advantage.”
The principle which must, I think, govern this case, is illustrated in the case in this court of Howe v. Searing, 6 Bosw., 354 ; S. C., 10 Abb. Pr., 264, where plaintiff sold his bakery, called and known as “Howe’s bakery ” to defendant, and the court restained the latter from continuing the use of the plaintiff’s name.
So in a case in the California courts (Woodward v. Lazar, 21 Cal., 448), the name which a tenant had adopted for a hotel, was held to be his property, and did not revert or go to the landlord, at the expiration of the term; and the latter was restrained from con- *99 tinning its use. And in Knott v. Morgan, 2 Keen, 213, a defendant was enjoined from using a name upon an omnibus, which had been previously adopted and used by the plaintiff. So in Deiz v. Lamb, 6 Robt., 537, the defendant was perpetually restrained from using the name “Prescott House” upon his carriages. And Christy v. Murphy, 12 How. Pr., 77, is another illustration, of the right of property in a name, and of the power of the court to restrain its misuse.
Indeed, the general principles which control, in cases of trademark, are analogous and entirely applicable to the species of property which is the subject of this action. And any unauthorized use of a trademark or name, although innocently used, if it work injury to the owner, will be restrained (Millington v. Fox, 3 Mylne & C., 338).
The case of Peterson v. Humphrey, 4 Abb. Pr., 394, greatly relied on by the defendants, qualifies the right to use the former name of a firm, by requiring that' there must be such alterations or additions as are calculated to give notice of a change in the firm; and it was there held that the use of the word “formerly,” as designating the succession, was calculated to prevent deception. But it was not) intended to decide, that any use of a former name, which was calculated to mislead the public, and injure the proprietor of such name, should not be prevented. I do not, however, admit the soundness of that decision, and should not adopt it, in opposition to my own views of the law applicable to this character of cases.
I am of the opinion, therefore, that enough appears in this case, to require the continuance of the injunction pendente lite. Upon the trial different facts may be established. Thus far the defendants have relied upon the supposed weakness of the plaintiff’s case, and have not changed its aspect by any statements in their affidavits.

 a special term, &c.
[ Titles 'of the Three causes.]
[The order here recited the making of the three several motions and their nature, and the papers on which they were made, and those read in reply, and the hearing of counsel on all sides, and continued as follows:]
“It is hereby ordered and adjudged, that a peremptory writ of mandamus forthwith issue from this court, commanding the said Michael Norton, Thomas Coman, James H. Ingersoll, and John J. Walsh, commissioners of the said new county court house, in the city of New York, forthwith to make, issue, and deliver to the said Bichard B. Connolly, comptroller of the city of New York, the written requisition of the said commissioners upon the said comptroller, requiring the said comptroller to pay upon the credit of the said commissioners to the said relator, as surviving partner of the late firm of J. B. & W. W. Cornell, the sum of thirty-four thousand seven hundred and twenty-five dollars and forty-eight cents, with interest on said sum from December 6, 1869, out of moneys sufficient in amount to pay the said sum of thirty-four thousand seven hundred and twenty-five dollars and forty-eight cents, with interest thereon as aforesaid, which shall or may first be raised and come into his hands under and in pursuance of the authority and direction contained in and given by the said section 7 of the act of the legislature above mentioned; and further commanding the said Bichard B. Connolly, comptroller of the city of New York, upon receiving the said requisition, forthwith to take the requisite and proper steps, and commence and carry through with all diligence the requisite and proper proceedings to raise the said amount required by said requi *93 sitien, to wit: the sum of thirty-four thousand seven hundred and twenty-five dollars and forty-eight cents, with interest on the said amount from December 6, 1869, on the stock of the county of New York, as and in the manner authorized and directed by and under the provisions of section 7 of the act of the legislature of the State of New York, passed April 19, 1871. being chapter 583 of the Laws of 1871, and entitled “ An act to make provision for the local government of the city and county of New York, and thereupon to pay upon the credit of the said commissioners to the said relator as surviving partner of the late firm of J. B. &. W. W. Cornell, the said amount, to wit: the sum of thirty-four thousand seven hundred and twenty-five dollars and forty-eight cents, and interest on the said amount from December 6, 1869, to the date of such payment, with ten dollars costs to the said relator. And that the said above entitled and recited motions, and each of them, be and hereby are, in all other respects, denied.”
On appeal the order was unanimously affirmed by the general term of the first department, consisting of Justices Ikqkaham, Babnabd and Cabdozo, on December 6, 1871. A peremptory mandamus was, on December 37,1871, issued according to the above order, directed to the commissioners and comptroller.