KINGSLEY et al. v. JACOBY.

(*Supreme Court, Special Term, New York County.* June, 1892.)

TRADE NAMES—UNAUTHORIZED USE—INJUNCTION.

The use by defendant of the name of plaintiffs' hotel as a trade-mark for his cigars will be enjoined, though, at the time of the registration of such trade-mark, plaintiffs had not opened the hotel for business, but had it in process of construction, where it appears that the hotel was well known by the name in question.

Action by Herbert M. Kingsley and another, partners as H. M. Kingsley & Bauman, against Herman Jacoby, to restrain the use of the name of plaintiffs' hotel as a trade-mark for defendant's cigars. A preliminary injunction was granted, and plaintiffs move to continue the same. Motion granted.

*Carter, Pinney & Kellogg,* for plaintiffs. *C. F. G. Wahle,* for defendant.

TRUAX, J. There is no doubt that the defendant intended to represent to the public that his cigars were in some way connected with the hotel known as "Holland House," in this city; and that the suggestion that the cigars were called "Holland House Bouquets," because some of the tobacco of which they were made was purchased from Holland houses engaged in the tobacco business, is a disingenuous afterthought. In fact, in the defendant's letter to the plaintiffs written in February, 1892, he said that "the well-known and justly-deserved popularity of your hotel has served as an inducement for me to apply its name, so widely known, to one of my new and best brands of cigars." At the time the defendant registered "the Holland House Bouquets" plaintiffs had not opened the "Holland House" for business, but at

that time the building was in process of construction, and it was well known in the city of New York as. "Holland House."

In *Deiz* v. *Lamb*, 6 Rob. (N. Y.) 537, the plaintiff, who was the proprietor of the "Prescott House" in New York city, moved for an injunction to restrain the defendant from placing the words "Prescott House" on his coaches. MONELL, J., in granting motion, after citing *Howard* v. *Henriques*, 3 Sandf. 725, and *Marsh* v. *Billings*, 7 Cush. 322, and other cases, says, in his opinion, at pages 539 and 540: "And in *Howard* v. *Henriques*, under an analogous state of facts, this court restrained, by injunction, the defendant from using the words 'Irving· House' upon his coaches and badges of his servants. * * * The cases to which I have referred, as well as *Christy* v. *Murphy*, 12 How. Pr. 77, are an answer to the proposition of the defendant's counsel that the plaintiff must establish in a court of law that he has sustained injury, before he can invoke the aid or protection of a court of equity. In this state, courts of equity will always interfere to prevent wrongs, while courts of law can only give redress after the wrongs have been committed."

In *Howard* v. *Henriques*, 3 Sandf. 725, where the plaintiff was the proprietor of an hotel in New York city, known as "Irving House" and as "Irving Hotel," it was held that he had a right to use those names, to the exclusion of other persons in the same city or town; and accordingly the defendant was restrained, by injunction, from using the name "Irving Hotel." It was urged, among other things, on behalf of the defendant, that the names "Irving House" and "Irving Hotel" were not the subject of appropriation as applied to an hotel; that the principle upon which trade-marks and other similar rights had been protected was applicable alone to personal property, to manufactured articles, to such things as were necessarily movable, and in reference to which frauds could be practiced without being easily detected. Judge CAMPBELL, in disposing of this objection, says, at pages 727 and 728: "Upon the second objection of the defendant, I, at first, had some doubt, which, by a more careful consideration and by conference with my associates, has been removed. We think that the principle of the rule is the same, to whatever subject it may be applied, and that a party will be protected in the use of a name which he has appropriated, and by his skill rendered valuable, whether the same is upon articles of personal property which he may manufacture, or applied to an hotel where he has built up a prosperous business. We are not disposed to interfere with the lawful pursuits of any one. Every man may and ought to be permitted to pursue a lawful calling in his own way, provided he does not encroach upon the rights of his neighbor or the public good. But he must not, by any deceitful or other practice, impose upon the public, and must not, by dressing himself in another man's garments, and by assuming another man's name, endeavor to deprive that man of his own individuality, and thus despoil him of the gains to which, by his industry and skill, he is fairly entitled. To make the application: If one man has, by superior knowledge, made his hotel desirable for the traveler, and caused its name to become popular throughout the land, another man· ought not to be permitted to assume the same name in the same town, and thus deprive him who first appropriated the name of some portion of the fruits of that good-will which honestly belong to him alone. It can hardly require argument to show that the use by the defendants of the same name for their hotel interferes with the plaintiff's business, and the fact is fully established by the affidavits. Such a result, under the circumstances, would seem to be inevitable. If the defendants may use the name, others may do the same, and the public would be inconvenienced by the confusion which would necessarily arise. There is no hardship in enforcing the rule against these defendants. There is an abundance of names by which they can designate their hotel, and if they can, by their own efforts, by their skill and careful attention in building up a profitable business, succeed in causing their hotel to become known and popular through-

out the land, they will in turn be entitled to protection against those who may seek to deprive them of the advantages which they may thus honestly acquire. The three of my associates, the chief justice and Justices DUER and MASON, who were present at the argument together with Justice SANDFORD, who granted the injunction, concur with me in the opinion that the injunction must stand."

In *Marsh* v. *Billings* 7 Cush. 322, the plaintiffs were licensed by the proprietor of the "Revere House," in the city of Boston, to put upon their coaches and the caps of their drivers the words "Revere House." A similar license had previously been given by the proprietor of the house to the defendants, but had been terminated by mutual consent. The defendants, however, continued to use the words "Revere House" on their coaches and the caps of their drivers. In an action on the case brought by the plaintiffs against the defendants for using said words, it was held by the supreme court of Massachusetts that the plaintiffs had an exclusive right to use the words "Revere House" for the purpose of indicating that they had the patronage of that house for the conveyance of passengers. FLETCHER, J., delivering the opinion of the court, says, page 330–332: "This is an action on the case sounding in tort. The principle involved in the merits of the case is one of much importance, not only to persons situated as the plaintiffs are, but to the public. But this principle is by no means novel in its character, or in its application to a case like the present. It is substantially the same principle which has been repeatedly recognized and acted on by courts, in reference to the fraudulent use of trade-marks, and regarded as one of much importance in a mercantile community. Vast numbers, no doubt, of the strangers who are continually arriving at the stations of the various railroads in the city have a knowledge of the reputation and character of the principal hotels, and would at once trust themselves and their luggage to coachmen supposed to have the patronage and confidence of these establishments. Not only much wrong might be done to individuals situated like the plaintiffs, but great fraud and imposition might be practiced upon strangers, if coachmen were permitted to hold themselves out, falsely, as being in the employment, or as having the patronage and countenance, of the keepers of well-known and respectable public houses. * * * The defendants, no doubt, had a perfect right to carry passengers from the station to the Revere House, and they might, perhaps, use the words 'Revere House,' provided they did not use them under such circumstances and in such manner as to effect a fraud upon others. The defendants have a perfect right to carry on as active and as energetic a competition as they please in the conveyance of passengers to the Revere House or any other house. The employment is open to them as fully and freely as to the plaintiffs. They may obtain the public patronage by the excellence of their carriages, the civility and attention of their drivers, or any other lawful means. But they may not, by falsehood and fraud, violate the rights of others. The business is fully open to them, but they must not dress themselves in colors and adopt and wear the symbols which belong to others." And it was further held in this case that the action would lie "without proof of actual or specific damage." Page 332. Motion to continue injunction granted, with $10 costs to abide event.