*(Superior Court of Cook County, In Chancery.)*

## Thomas M. Meldrum

### vs.

## Sam. S. Shubert, et al.

(March 12, 1904.)

1. TRADENAME—NECESSITY OF ACTUAL USER TO ESTABLISH RIGHT TO. To entitle a person to the exclusive use of a tradename two conditions must exist: first, adoption of the name or mark, and second, its actual use. An intent to use at some time in the future is not sufficient.

2. SAME—USE IN CONNECTION WITH ESTABLISHMENT. A tradename must actually be used in connection with the establishment which it is intended to designate.

3. SAME—PROTECTION OF TRADENAME IN EQUITY. The name established for a hotel or theater is a trade name, in which the proprietor has a valuable interest, which a court of equity will protect.

4. SAME—NOT NECESSARY TO SHOW FINANCIAL LOSS TO OBTAIN PROTECTION. It is not necessary in order to obtain protection in respect to a trade name, that the complainant be menaced with

financial loss. It is sufficient if he might be inconvenienced, interfered with or annoyed.

5. Same—The Name "Garrick Theater" Protected. The complainants were the owners of a small local theater known as the "Garrick" theater. The defendants announced their intention of applying the same name to their theater, a large theater in the heart of a city, which was formerly known under another name. Held that the complainants were entitled to an injunction.

Bill for an injunction. Heard before Judge Jesse Holdom.

*Taylor E. Brown, Thomas J. Graydon, Wm. Friedman* and *C. C. Poole,* for complainant.

*Herman Frank,* of *Felsenthal & Foreman,* for defendants.

### Statement of Facts by the Court.

The cause came before the court on October 3, 1903, upon bill filed and motion for injunction *pendente lite,* the injunction having been recommended by master in chancery Browning. The court declined to confirm the recommendation of the master and various hearings were had; additional affidavits filed by each party; a stipulation was entered into to the effect that various affiants whose affidavits had been filed, if called as witnesses, examined and cross-examined, would testify to the statements contained in said affidavits; and that the affidavits should be treated as proofs in the cause. The cause then proceeded to final hearing upon bill, answer, replication and proofs as filed, was argued and submitted Wednesday, October 28th, and subsequently briefs were filed by each party. The following statement of facts was prepared by the court.

### Findings of Fact.

Complainant, in October, 1902, leased a building at Milwaukee avenue and Will street, Chicago, for ten years, and at an expenditure of about ten thousand dollars converted it into a theater and called it "The New Garrick," and as such, on November 15, 1902, opened it to the public. That about

December 1, 1902, it came to be called and known as the "Garrick." Complainant from that time operated his said theater, and called it the "Garrick," until the completion of the theatrical season, May 20, 1903, when it was closed for repairs and alterations, and was about to be re-opened for theatrical performances as the "Garrick" theater at the time of the filing of the bill herein; that during all of the time mentioned, complainant's theater was advertised in the newspapers, on billboards, letterheads and tickets, as the "Garrick" theater, and was so referred to in newspaper theatrical notices and criticisms of its actors and performances, during all of which time it was the only theater in Chicago with the word "Garrick" in its name.

On March 19, 1902, defendants leased what was then known as the Dearborn Theater on Randolph street, near Dearborn, for a term of ten years, commencing September 1, 1903. That they thereupon concluded to adopt the name of "Garrick" for their new theatrical house. That as early as April, 1902, defendants caused to be published in the Chicago newspapers, articles announcing the new lease (although intentionally avoiding naming the lessees) ; and that after September 1, 1903, the theater would be renamed and called the "Garrick." Knowledge of this fact at this time was not brought home to the complainant, and not until December 1, 1902, did he know of the intention of the defendants to name the Dearborn theater the "Garrick" on its coming into their possession, which fact he first learned by reading a statement to that effect on that day in the New York Clipper, a publication devoted to theatrical news. Complainant soon after reading the notice in the New York Clipper sent a letter to defendants, by mail, to New York, informing them of his being the operator of a theater called the "Garrick," and enclosing posters, programs and advertising matter corroborative of such statement, and again on September 1, 1903, sent defendants similar notice by mail, with like enclosures, directed to them at Chicago.

Complainant's theater is what is generally known as a local and a neighborhood theater, its patrons being for the most

part residents in the vicinity of its location; while the theater of the defendants is a large metropolitan theater in the downtown district and draws for its patronage upon all the residents of Chicago generally and the strangers within her gates.

In most of the posters, programs, tickets, and other literature of defendants is printed, "The Garrick, formerly Dearborn Theater." Since the opening of defendants' theater, certain complications, owing to the use of the name "Garrick," have arisen between the parties; such as bills intended for the one being sent to and received by the other; passes intended for one have been presented to the theater of the other and been dishonored; telephone messages intended for the Randolph street Garrick have found their way into the box office of the Milwaukee avenue Garrick; the bill boards of the Milwaukee avenue concern have been posted over with the posters of the Randolph street concern, to the obliteration of the announcements of the former.

Defendants at the time of the filing of the bill had no other theater operated or owned by them known or called by the name of "Garrick." At the time defendants concluded to call their Chicago theater by the name of "Garrick," there was no theater in Chicago by that name. At the time they opened the Dearborn theater under the name of "Garrick" complainant's theater under that name had been in operation nine months.

OPINION.

HOLDOM, J. (after stating the foregoing facts) :—

At the time complainant adopted the name of "Garrick Theater" to designate his place of amusement he had a perfect legal right to do so and in so doing neither interfered, nor trespassed upon the right of any other person in Chicago. It became and was the only "Garrick Theater" in Chicago. His legal right to exclusively use and maintain this name for his theater must be tested under that branch of the law designated as "Trade Marks or Trade Names," the principles of the former being applicable to the latter and resting for their

maintenance upon the same correlative legal right and equitable principle.

Is the complainant entitled to maintain this right to the exclusion of the defendants within the limits of the city of Chicago, or may defendants share that right with him? If it can be so maintained it must find its support in primary actual use as distinguished from an adoption coupled with an intent to actually use at some time in the future.

All the authorities decide, wherever the question has been presented for adjudication, that to entitle one to the use of a trade-mark or name, two conditions must exist: first, adoption of the name or mark, and second, its actual use; and the latter is as essential as the former to confer the right. *Kathreiner's Malzkaffee Fab. v. Pastor Kneipp Med. Co.,* 82 Fed. Rep. 325.

If a trade-mark, the emblem or symbol must be attached to the article designated to be protected, and if a trade name, then such name must be actually used in connection with the establishment which it is intended to designate, be it a hotel, theater, or business house. *Candee, Swan & Co. v. Deere & Co.,* 54 Ill. 439; *Hazleton Boiler Co. v. Hazleton Tripod Boiler Co.,* 142 Ill. 494–507; *Bolander v. Peterson,* 136 Ill. 215–217.

Paul on Trade Marks makes the following definitions in sections 160 and 172: "A trade or a commercial name is the name under which a business is carried on, or by which it is designated, or the name of a place at which a business is located. * * * A trade name should be considered and treated as a trade mark."

The supreme court of California applied these definitions in deciding *Woodward v. Lazar,* 21 Cal. 448, colloquially referred to as the "What Cheer House Case." It said on page 451: "It has been decided, and with good reason, that the name established for a hotel is a trade mark, in which the proprietor has a valuable interest, which a court of chancery will protect against infringement." The legal principle here announced is applicable with as much force to the theater of complainant in the case at bar, and is a controlling principle.

In fact, no well-authenticated case within my knowledge holds. to the contrary.

The only case cited to support defendant's contention that the intention to adopt a name preserves the right to the one who, following on such declared intention, in fact does adopt. such a name, is the case of *Kingsley v. Jacoby*, 20 N. Y. Supp.. 46. At the time of the institution of the action Kingsley had in course of construction on a prominent thoroughfare in New York City, a hotel under plans designating it as the "Holland House." Kingsley at that time had a wide and extended reputation as a caterer and the hotel at that time was well known in New York as the "Holland House." The defendant, Jacoby, a dealer in cigars, registered a brand of cigars as "The Holland House Boquets," claiming in defense that he did so because some of the tobacco of which they were made, was purchased from Holland houses engaged in the tobacco business—which the court characterized as a "disingenious afterthought" in the light of his letter to Kingsley,. in which he said "the well known and just deserved popularity of your hotel has served as an inducement for me to apply its name, so widely known, to one of my new and best brands of cigars." Nothing said by the court in its opinion can be construed as holding that Kingsley was protected in the use of the name "Holland House," because of an expressed intention to so call his hotel. The name had been actually applied to the hotel, and the court said in its opinion "that it was well known in the City of New York as 'Holland House.' " However, the decision rested on the principle of unfair competition. Jacoby held himself out to the public as selling Holland House cigars for the purpose of profiting in their sale by reason of the well known reputation of that house for the excellent quality of the things emanating from it. This was a fraud in fact, as the Holland House had nothing whatever to do with Jacoby's so-styled brand of cigars.

It is insisted on the part of the defendants that complainant has not and can not suffer any pecuniary loss by reason of their operating their theater under the name of "Garrick,"

and that if any injury does result it is damage without injury, and that it therefore follows complainant is not entitled to invoke the relief here demanded.

It is true that complainant is not seriously menaced with financial loss by reason of defendants designating their theater as the "Garrick" in violation of the right of complainant to the exclusive use of that name for the Milwaukee Avenue Theater. Yet the evidence shows beyond controversy that complainant is inconvenienced, interfered with and annoyed in the conduct of his theatrical enterprise because of the existence of these dual theaters with the same name.

If the right to the exclusive use of the name "Garrick" by complainant is established, then aside from the question of his financial loss by reason of the invasion of such right by defendants, he would on the ground of inconvenience, interference and annoyance, thus resulting to him, be entitled to the relief here sought, regardless of the other question, whether the right to the use of such name may be regarded in law as a property right or not.

By complainant's adopting and actually using in the conduct of his theater the name "Garrick" he acquired a trade name or mark therein which was neither divested nor impaired in any way, by defendants' expressed intention prior to such use to so call the Dearborn Theater when they should in the future come into possession of it, nor by their afterward calling it by that name. Neither the advertised intention of defendants so to call their theater prior to complainant's actually using the name "Garrick" as the name of his theater, nor by, after such adoption and use by complainant of that name, applying the name "Garrick" to their theater, was the right of complainant impaired, nor did the defendants by either or both of said acts become vested with any right to so use the name "Garrick" as against the right of complainant or to use the same in the modified form "Garrick, formerly Dearborn," without the consent of complainant, or against his protest.

A decree may be entered enjoining defendants as prayed, from using the name "Garrick," or any modified form

thereof in which the name "Garrick" appears, in either the designation or conduct of their theater on Randolph street, Chicago, formerly known as the "Dearborn Theater."

NOTE.—An appeal was taken in the above case to the appellate court for the First District of Illinois. Thereafter the appellee was adjudicated a bankrupt and the trustee in bankruptcy was substituted as appellee. The appellant thereupon purchased in the bankruptcy proceedings the right to use the name "Garrick Theater." Error was thereupon confessed in the appellate court by the appellee and the case was reversed without any consideration of the questions involved. The above decision is therefore a final one and in principle it is unreversed.—Ed.